UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IVAN REUTOV, | ) |
| | ) No. CV-05-0293-MWL |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing with oral argument on May 10, 2006. (Ct. Rec. 9, 13, 17).  Plaintiff Ivan Reutov ("Plaintiff") filed a reply brief on March 27, 2006.  (Ct. Rec. 15).  Attorney James T. Solan represents Plaintiff; Special Assistant United States Attorney Richard A. Morris represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 3).  After reviewing the administrative record and the briefs and argument by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 13) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).

- 1 -

**JURISDICTION**

On January 17, 2002, Plaintiff filed applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"), alleging disability since October 15, 1998, due to pain in his neck and back and noise in his head. (Administrative Record ("AR") 92-94, 210, 307-311). The applications were denied initially and on reconsideration.

On December 3, 2003, Plaintiff appeared before Administrative Law Judge Mary B. Reed ("ALJ"), at which time testimony was taken from Plaintiff, Plaintiff's son (Anton Reutov), and vocational expert Daniel McKinney. (AR 334-397). A supplemental hearing was held on June 23, 2004, at which time testimony was taken from Plaintiff and Anton Reutov. (AR 398-458). A Russian language interpreter was present and assisted Plaintiff at both hearings. (AR 334, 398).

On November 1, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 15-24). The Appeals Council denied a request for review on July 29, 2005. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on September 26, 2005. (Ct. Rec. 1).

In Plaintiff's reply brief in this case, Plaintiff agreed that it is difficult to tell when he actually stopped working in the fishing industry. (Ct. Rec. 15, p. 2). Therefore, by way of his reply brief, on March 27, 2006, Plaintiff indicated that he reviewed the exhibits and testimony and determined that the date

of onset of disability should be amended to September 15, 2001. (Ct. Rec. 15, pp. 2-3).[1]  Accordingly, the relevant time period in this case is from September 15, 2001 (Plaintiff's amended onset date) to November 1, 2004 (the date of the ALJ's decision in this case).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and will only be summarized here.  Plaintiff was 56 years old on the date of the ALJ's decision.  (AR 16).

Plaintiff testified at the administrative hearing held on December 3, 2003, that he could read and write in Russian but, in English, he could only read a little and could only write his signature.  (AR 340).  He obtained his citizenship in 1976, but attended no schooling in the United States.  (AR 341).

Plaintiff testified that he began work in fishing in 1972. (AR 342).  He was the captain of a boat, The Ceon, which he owned and piloted, and had employees to do all the work.  (AR 342). Plaintiff also indicated he was previously in a construction business building pole barns with his sons, but had not done that type of work for three years.  (AR 343).  He additionally previously performed work in woodworking in Alaska.  (AR 344-345).

Plaintiff indicated that he was not working as a fisherman anymore, but would go to Alaska in order to use his fishing license once a year.  (AR 346, 368).  Although Plaintiff stated

---

[1] On January 15, 2002, Plaintiff indicated his disability commenced on October 15, 1998 and that he worked after the date of his injuries, indicating that he "works summers on fishing boat only."  (AR 210).  Two days later in his application for SSI, Plaintiff reported that his disability began on January 1, 2000.  (AR 307).

that he is unable to work, he described how he makes an income by using his fishing license. (AR 349). He indicated that he has workers go out on the boat, harvest the fish, clean the fish and bring them back in. (AR 349). He pays for all the expenses, including the workers' fees, and keeps the profit. (AR 349). To use his fishing license, he needs to be present at the dock when the boat comes in. (AR 348). If the person with the license is not present, the Halibut Commission may confiscate the fish. (AR 348). This is how Plaintiff has supported himself since 2001, and he stated that this is what will happen every year. (AR 349). Plaintiff testified that he flies to Alaska once a year in order to present his fishing license. (AR 368).

Plaintiff indicated that Halibut fishing season is March through November, but the way it works is that you go out in the boat opening day and catch your quota within 24 hours. (AR 364). Therefore, all the Halibut fishing for the year would take place in one day. (AR 364-365).

Plaintiff testified that he was injured while working in construction in 1977. (AR 350). He fell from a top floor, lost consciousness and, later, noticed back and neck pain. (AR 350-351). He also had a fall on a boat in 1998 that damaged his neck. (AR 352). He stated that he stopped working following that fall. (AR 352). He indicated that what keeps him from working at this time is that he can no longer lift heavy things and experiences pain when bending. (AR 351). He has pain when walking and stated that he could only walk a couple of minutes before needing to sit. (AR 356).

///

1    At the administrative hearing held on June 23, 2004,
2 Plaintiff testified that he had transferred ownership in his boat
3 to his son, Anton Reutov, so that Anton could use the boat as
4 collateral for a loan for fishing equipment. (AR 408-409). He
5 indicated that in 2001 and 2002 he was still paying for the
6 moorage of the boat in Alaska, taking the same as an expense on
7 his tax return. (AR 420). The ALJ pointed out that Plaintiff was
8 claiming additional expenses on his tax returns in 2001 and 2002,
9 including crew shares, annual gear, and diesel fuel. (AR 420-
10 423). The ALJ additionally indicated that Plaintiff's tax returns
11 reveal that Plaintiff was depreciating a Ford Ranger and a wash
12 pump and received $12,000 in income from Frame Right Construction.
13 (AR 425). Plaintiff testified that, in 2004, he had traveled by
14 plane to Alaska in order to present his fishing license to get
15 paid for Halibut fishing that season. (AR 409-410). He stated
16 that he was not involved with fishing or piloting the boat; he
17 merely flew up to Alaska to present his fishing license at the
18 docks. (AR 410). He indicated that his catch was worth $21,000
19 in 2004 before expenses. (AR 413). However, Plaintiff indicated
20 that he has not done any physical work on the dock, nor worked on
21 a boat, since around 2000. (AR 428).

22    With regard to the Frame Right partnership, Plaintiff
23 testified that, although his name was on the partnership, he
24 participated very little in the business. (AR 414-417). He did
25 not do any work for Frame Right in 2003 or 2004. (AR 428-429).
26 However, in 2002, he did some light work on a couple of occasions
27 for Frame Right, but nothing extensive due to his limitations
28 ///

caused by pain. (AR 428-429). When Frame Right first started, Plaintiff did some work for them, but was not constantly involved with the business. (AR 428).

Plaintiff's son, Anton Reutov, testified at the administrative hearing on December 3, 2003, that he began fishing in Alaska with his father when he was 14 years old and has continued fishing since that time. (AR 373). He testified that he also owned and operated a pole barn building business (Frame Right) which was previously run as a partnership with his father and brother. (AR 387-390). Although he had not officially excluded his father and brother as partners, he indicated that it was solely his business at this time. (AR 389-390). He stated that his father had done no work for him in 2001 and had only worked a couple of days in 2002. (AR 387-389).

Anton Reutov also testified at the administrative hearing held on June 23, 2004. (AR 430). He stated that Plaintiff transferred his boat, The Ceon, to Anton in 1993 so that Anton would have collateral for a loan. (AR 432-434). However, it was related that Plaintiff still insured The Ceon and used it for fishing Halibut prior to 2000, but, legally, it had belonged to Anton. (AR 433-434). Anton later transferred ownership in the boat to his brother so that his brother could use the boat as collateral on a different loan.

When they started the pole barn building partnership in 1999, Anton stated that Plaintiff performed the trim work, which is the lightest work available on the job. (AR 442). He indicated that Plaintiff worked about 15 to 20 hours a week during that time. (AR 442). In 2002, Anton took over the company and continues to

run it on his own. (AR 443). He indicated that they never had a formal partnership agreement and, in 2002, Anton paid his brother and Plaintiff $800 a piece for the business tools and essentially took over the business. (AR 443).

Anton testified that Plaintiff put in sporadic hours for Anton on the boat in 2001. (AR 446). Anton supervised the crews in 2001, not Plaintiff. (AR 448). Anton indicated that he overcompensated Plaintiff for the amount of work performed in 2001, because Plaintiff was his father. (AR 446). Anton testified that, in 2001, Plaintiff at least tried to complete the fishing up in Alaska. (AR 454). He stated that Plaintiff has not returned to work since that time. (AR 455).

Vocational expert Daniel McKinney also testified at the December 3, 2003, administrative hearing. (AR 390).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work,

the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has engaged in substantial gainful activity since his alleged onset date of October 1998. (AR 20). The ALJ found that the record is clear that Plaintiff continues to actively participate in the fishing business as he continues to render significant services to the business. (AR 20, 22-23). The ALJ found that Plaintiff's activity in a pole barn construction business with his son was also apparent from the record. (AR 20-23).

The ALJ indicated that tax returns for 2000 indicate that Plaintiff continued to fish for salmon (as well as halibut), and his gross receipts from fishing totaled $52,700. (AR 21). His total expenses for 2000 was $50,305, and he listed his occupation as a commercial fisherman. (AR 21). Plaintiff's 2001 tax return revealed a gross income from fishing of $60,896 and total expenses of $52,823. (AR 21). Plaintiff's 2002 tax return shows gross receipts from fishing of $15,904 and total expenses of $13,641. (AR 21). Tax returns for 2003 show $34,257 in gross earnings from the fishing business with total expenses of $22,084. (AR 21).

The ALJ concluded, at step one of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23-24). If a claimant is found to be not disabled at any particular step, the Commissioner will make its determination without moving on to the next step. 20 C.F.R. § 404.1520(a)(4). Since the ALJ determined that Plaintiff was not disabled at the first step because Plaintiff continued to engage in substantial gainful activity, it was not necessary for the ALJ
///

to proceed or analyze the rest of the steps in the sequential evaluation process.

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1. The ALJ erred by concluding, at step one of the sequential evaluation process, that Plaintiff was engaged in the performance of substantial gainful activity during the relevant time period; and

2. The ALJ erred by determining that Plaintiff was not entirely credible in this case.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Substantial Gainful Activity**

Plaintiff contends that the ALJ erred by finding that Plaintiff continued to engage in substantial gainful activity after 2000. (Ct. Rec. 10, pp. 3-9). The Commissioner responds that the ALJ properly found that Plaintiff continued to perform substantial work activity during the relevant time period. (Ct. Rec. 14, pp. 6-9).

As noted above, by way of his March 27, 2006 reply brief Plaintiff indicated the date of onset of disability should be amended from October 15, 1998, to September 15, 2001. (Ct. Rec. 15, pp. 2-3). Accordingly, the time period at issue in evaluating Plaintiff's activity in this case is from September 15, 2001

(Plaintiff's amended onset date) to November 1, 2004 (the date of the ALJ's decision in this case).

The Social Security Regulations establish a five step test under which to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). The steps of the test are sequential, and if a claimant is found to be not disabled at any particular step, the Commissioner will make its determination without moving on to the next step. 20 C.F.R. § 404.1520(a)(4). At the first step, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is working and the work is deemed substantial gainful activity, the Commissioner must find that the claimant is not disabled regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Accordingly, the burden is on Plaintiff, at step one, to disprove that he has engaged in substantial gainful activity.

20 C.F.R. § 404.1575 sets forth the following three tests to determine whether a self-employed claimant has engaged in substantial gainful activity:

> (1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business.
>
> (2) Test Two: You have engaged in substantial gainful activity if your activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

> (3) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in 20 C.F.R. § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(1-3).

Under the first prong of Test One, if the business involves the services of more than one person, he is considered to be rendering significant services if he contributes more than half the total time required for the management of the business or he renders management services for more than 45 hours a month regardless of the total management time required by the business. 20 C.F.R. § 404.1575(b)(1). Under the second prong of test one, self-employed income is evaluated by deducting normal business expenses from the claimant's gross income in order to determine the claimant's net income. This figure is then averaged and compared to the regulatory earnings threshold set forth in 20 C.F.R. § 404.1574(b)(2). If the claimant's income averages more than the regulatory threshold, the claimant will be deemed to have earned substantial income. If, on the other hand, the claimant's income is less than the amounts described in 20 C.F.R. § 404.1574(b)(2), the claimant's income will still be deemed substantial if it is comparable to what it was before the claimant became impaired. 20 C.F.R. § 404.1575(c)(2). Under 20 C.F.R. § 404.1574(b)(2), the regulatory threshold for establishing substantial gainful activity is over $500 a month from January 1990 to June 1999, over $700 a month from July 1999 to December 2000, and slightly higher for the years 2001 through 2004. 20 C.F.R. § 404.1574(b)(2).

After reviewing the record and the contentions of the parties in this case, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff was engaged in substantial gainful activity in the fishing industry during the relevant period (AR 20) and is therefore not disabled.

First, Plaintiff rendered services that are significant to the operation of his business by providing significant time to the business. 20 C.F.R. § 404.1575(b)(1). Plaintiff has worked as a self-employed commercial fisherman since 1972. (AR 342). His duties as the captain of his boat included securing the vessel, utilizing his valuable fishing license, piloting the boat, overseeing his crew, delivering his catch, and generally managing the business. He operated the business on his own with the assistance of a two or three person crew. Although he testified that he had not gone out and actually fished on the boat since approximately 2001, his duties since 2001 still entailed securing and insuring the vessel, flying up to Alaska once a year to utilize his fishing license, being present at the dock when his crew returns to deliver the catch, and, inferentially, managing the crew and the business in general in order to obtain a profit. (AR 348-349, 409-410, 420-423). Plaintiff testified that the actual fishing portion of the business takes place within 24 hours after opening day. (AR 364). He stated that all the Halibut fishing for the year would take only one day to complete. (AR 364-365). It is logical to infer that Plaintiff's duties after 2001, as listed above, would clearly exceed more than half the total time of this business.

///

Moreover, with reference to his fishing employment, Plaintiff testified how he makes an income by using his fishing license, and stated "its going to happen every year like that." (AR 349). Plaintiff then pointed out that if he were to sell his fishing license, he would have no means to support himself. (AR 349).

Second, substantial evidence supports the ALJ's determination, pursuant to 20 C.F.R. § 404.1575(a)(1), that Plaintiff received a substantial income from his work. According to Plaintiff's income tax returns, Plaintiff's gross revenues from fishing in 1997 was $77,179, in 1998 was $43,237, in 1999 was $67,628, in 2000 was $52,700, in 2001 was $60,896, in 2002 was $15,904, and in 2003 was $34,257. (AR 20-21). Plaintiff indicated at the administrative hearing that his 2004 catch was worth $21,000 before expenses. (AR 413).

After deducting expenses to calculate Plaintiff's net income during these time periods (AR 20-21), it appears that Plaintiff's average monthly income exceeds the regulatory earning threshold for most of the years Plaintiff claims he was disabled. 20 C.F.R. § 404.1574(b)(2). Furthermore, Plaintiff's income tax returns and stated earnings show that his net income has remained relatively stable. Although his net income from fishing has fluctuated over time there may be other reasons for the income decreases such as market changes in the price of Halibut. More importantly, Plaintiff's post-2001 income is comparable to his pre-2001 income, 20 C.F.R. § 404.1575(c)(2), and his work as a self-employed commercial fisherman during those years generally produced substantial income. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was engaged in substantial

1 gainful activity from September 15, 2001 (Plaintiff's amended
2 onset date) to at least November 1, 2004 (the date of the ALJ's
3 decision in this case).  The ALJ correctly found that Plaintiff is
4 not disabled at step one of the sequential evaluation process.

**B.   Plaintiff's Credibility**

Plaintiff also provides a cursory argument that the ALJ erred by concluding that he was not entirely credible as a witness. (Ct. Rec. 10, p. 10).  Plaintiff asserts that there exists some confusing questions and answers, given Plaintiff's language barriers, but that nothing suggests his testimony is not credible. The undersigned does not agree.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

///

The ALJ determined that Plaintiff's testimony was not fully credible regarding his work activity. (AR 20). In support of this finding, the ALJ indicated that (1) Plaintiff's testimony regarding his work was sometimes contradictory (his testimony was inconsistent regarding the nature and extent of his fishing operations, and a review of his tax returns, including a review of his expenses, reveals that his fishing business is more extensive than flying up to Alaska to be present when the boat returns to the dock); (2) Plaintiff testified that he provided information to a tax return preparer regarding his income and expenses, yet he was unable to provide clarification regarding various items on his tax returns; and (3) he was inconsistent on whether he fished for salmon and halibut in recent years, although tax returns and his hand written notes indicated that he had. (AR 20, 22-23).

As noted above, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes*, 881 F.2d at 751. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. *Allen*, 749 F.2d at 579. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.

After reviewing the record, the undersigned judicial officer finds that the ALJ's rationale for discounting Plaintiff's testimony pertaining to his work activity is supported by the record evidence. It is significant to note that, although Plaintiff argues that a language barrier was the reason for confusion as to Plaintiff's testimony, a Russian language interpreter was present and assisted Plaintiff at both hearings.

(AR 334-458). Moreover, it appears that Plaintiff concedes that his testimony regarding his work activity was contradictory as Plaintiff originally maintained his onset date of disability was October 1998 then, upon filing his March 27, 2006 reply brief, amended the onset date to September 15, 2001. Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff's testimony regarding his work activity was not fully credible in this case. (AR 20, 22-23).

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff did not meet his burden of demonstrating that he has been unable to engage in substantial gainful activity during the relevant time period is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 13**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___22nd___ day of May, 2006.

        s/Michael W. Leavitt
        MICHAEL W. LEAVITT
        UNITED STATES MAGISTRATE JUDGE